**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| LOCKRIDGE OUTDOOR ADVERTISING, LLC, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )          5:21-cv-00089-JMH |
| | ) |
| LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, | ) |
| | )          **MEMORANDUM OPINION** |
| | )                **AND ORDER** |
| *Defendant*. | ) |

* * *

This matter is before the Court on Defendant Lexington-Fayette Urban County Government's ("LFUCG") Motion to Dismiss, or in the alternative, Motion to Stay Proceedings. [DE 11]. For the reasons stated herein, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and the Motion to Stay is **DENIED**.

**BACKGROUND**

Lockridge Outdoor Advertising, LLC ("Lockridge") specializes in erecting and operating signs. [DE 1 at ¶ 1]. When Lockridge decided to enter the Lexington, Kentucky, market, Lockridge researched the commercial areas, contacted landowners, and eventually entered lease agreements where Lockridge would install and operate the new signs on the other party's property. [*Id.* at ¶¶ 8-10].

At the time Lockridge was attempting to obtain LFUCG's permission to post signage, applicants were required to follow the

Sign Regulations detailed in Article 17 of the Lexington-Fayette County, Kentucky Zoning Ordinance ("Old Sign Ordinance"). [*Id.* at ¶ 11]. Lockridge submitted multiple applications. Two applications were approved, but Lockridge's later applications to revise the permits were denied. [*Id.* at ¶¶ 32-33]. The applications for three additional sites were denied. [*Id.* at ¶ 44].

On March 18, 2021, the Old Sign Ordinance was amended. On April 1, 2021, Lockridge filed a Complaint [DE 1] with this Court challenging the constitutionality of the Old Sign Ordinance *only*. [*Id.* at ¶ 11, n.1]("The Amended Sign Regulations are ***not*** at issue in this case."). In response, LFUCG filed the Motion to Dismiss [DE 11] asserting that Lockridge's claims are moot and not yet ripe. The Motion requests in the alternative that the proceedings be stayed.

**ANALYSIS**

Rule 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "If a controversy is moot, the court lacks subject matter jurisdiction over the action." *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 851 (W.D. Ky. 2007)(citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). "The court lacks subject-matter jurisdiction if the action is not ripe for review." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 815 (E.D. Ky.

2019)(citing *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir.1992).

## A. MOOTNESS

"Article III of the United States Constitution limits the federal judicial power to 'Cases' and 'Controversies.'" *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 395 (6th Cir. 2020)(citing U.S. Const. art. III, § 2, cl. 1). The mootness doctrine requires that those cases or controversies be "live" at the time the court decides the case. *Gottfried v. Medical Planning Services*, 280 F.3d 684, 691 (6th Cir. 2002)("A case is moot when the issues presented are no longer 'live' **or** the parties lack a legally cognizable interest in the outcome.") "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

"Repeal of a challenged law can, in some cases, render a case or controversy moot." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019)(citing *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997)). Whether a claim is affected by a repealed law depends on what relief is being sought.

The mootness doctrine often renders courts unable to grant declaratory or injunctive relief "[b]ecause the Court must 'apply

3

the law as it is now.'" *Dubac v. Parker*, 168 F. App'x 683, 688(6th Cir. 2006)(citing *Kremens v. Bartley*, 431 U.S. 119, 129 (1977)). Courts "can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004)(upholding the dismissal of plaintiff's claims for declaratory and injunctive relief as moot because the challenged zoning ordinance was no longer in effect).

In contrast, "[c]laims for damages are largely able to avoid mootness challenges." *Ermold v. Davis*, 855 F.3d 715 (6th Cir. 2017) (citing 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3553.3 (3d ed. 2017)). So even though "the repeal or amendment of a law moots challenges to the original law ... [t]he existence of [a] damages claim preserves the plaintiffs' backward-looking right to challenge the original law and to preserve a live case or controversy over that dispute." *Midwest Media Prop*., L.L.C. v. Symmes Twp., 503 F.3d 456, 460-61 (6th Cir. 2007).

LFUCG argues that Lockridge's claims for declaratory and injunctive relief are moot because the challenged ordinance has been replaced. [DE 11 at p. 7]. In response, Plaintiff claims this argument is "misguided" because Plaintiff is not seeking "prospective declaratory and injunctive relief," but "seeks *only* retrospective relief" constituting "damages (compensatory,

general, and nominal) and attorneys' fees" and "equitable relief in the form of sign permits for the violation of its federal and state constitutional rights." [DE 12 at pp. 9-10].

Despite claims to the contrary, Plaintiff's Complaint does partially ask for a form of declaratory and injunctive relief. Plaintiff requests that the Court issue Plaintiff sign permits after determining that the Old Sign Ordinance is unconstitutional. While not labeled as declaratory or injunctive, the nature of the request requires the Court to construe it as such. Lockridge's request for "an order declaring that [LFUCG]'s denial of Lockridge's sign applications violated the First Amendment to the United States Constitution and Section 1 and 8 of the Kentucky Constitution" [DE 1 at ¶ 77] is a request for declaratory relief. Similarly, Lockridge's request for "an order compelling Defendant to permit the applied-for signs and/or LED displays" [*Id*.] is a request for injunctive relief. To grant the sought-after relief, this Court would be required to both "declare unconstitutional" and "enjoin the enforcement of a provision that is no longer in effect" in direct violation of *Brandywine*, 359 F.3d at 836. Therefore, to the extent Lockridge asserts claims for declaratory and injunctive relief, such claims are dismissed as moot. Plaintiff's claims for "actual, consequential, general and/or nominal damages" remain. However, Plaintiff is only eligible to

receive damages up to the date that the new ordinance was implemented.

**B. RIPENESS**

LFUCG's second argument asserts that the claims are not ripe because Lockridge did not first seek administrative relief after the sign permits were denied nor has Lockridge shown that further administrative actions would be futile. [DE 11 at pp. 9-10]. According to LFUCG, Lockridge could have sought a variance from the Board of Adjustment or "utilized the text amendment process to propose a text amendment that would have permitted the advertising signs it sought permits for. . . " [*Id.* at pp. 10-11]. Lockridge responds that the law does not require it to exhaust administrative remedies prior to bringing a claim pursuant to 42 U.S.C § 1983. [DE 12 at p. 13].

For a case to be considered ripe, a threatened or actual injury must exist. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). The purpose of the ripeness doctrine is to "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (citing

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967)). In

determining whether a case is ripe, the Court asks:

> (1) is the claim "fit[] . . . for judicial
> decision" in the sense that it arises in a
> concrete factual context and concerns a
> dispute that is likely to come to pass? and
> (2) what is "the hardship to the parties of
> withholding court consideration"?

*Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008)(citing

*Abbott Labs.*, 387 U.S. at 149).

When dealing with regulatory takings, the traditional

ripeness analysis is slightly altered. *Williamson Cty. Reg'l*

*Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 187 (1985). For

cases involving the taking of a property interest, the

"governmental entity charged with implementing the regulations

must have reached a final decision regarding the application of

the regulations to the property at issue." *Id*. The Sixth Circuit

has extended the finality requirement to "other constitutional

claims arising out of land use disputes" including certain First

Amendment claims. *Insomnia Inc. v. City of Memphis*, 278 F. App'x

609, 612 (6th Cir. 2008). Nonetheless, for First Amendment claims,

"the ripeness doctrine is somewhat relaxed," and certain

exceptions to the finality requirement exist. *Dougherty v. Town of*

*N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 90 (2d Cir. 2002).

While the Sixth Circuit has "extended the finality

requirement to First Amendment retaliation claims, *see Dubuc v.*

7

*Twp. of Green Oak*, 406 F. App'x 983, 990-91 (6th Cir. 2011); *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 616 (6th Cir. 2008)" it is uncertain whether the Sixth Circuit would further extend the finality requirement in the First Amendment context unrelated to retaliation. *Elvis Presley Enters. v. City of Memphis*, No. 2:18-cv-2718, 2020 U.S. Dist. LEXIS 194895, at *11 (W.D. Tenn. Oct. 21, 2020). The two questions the court asks before subjecting a plaintiff to the finality requirement, "whether the [plaintiffs] experienced an immediate injury as a result of [the defendant's] actions and (2) whether requiring the [plaintiffs] to pursue additional administrative remedies would further define their alleged injuries," likely have different answers outside of the retaliation context. *Insomnia*, Inc., 278 F. App'x at 612 (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005)).

This district recently held that claims challenging the same Old Sign Ordinance at issue here were ripe for review because the finality requirement was not applicable. *Lamar Co., LLC v. Lexington-Fayette Urban Cty. Gov't*, Civil Action No. 5: 21-043-DCR, 2021 U.S. Dist. LEXIS 122163, at *12 (E.D. Ky. June 30, 2021). The Lamar Company, LLC, a sign display business, sued LFUCG after its twenty applications for sign permits were denied. *Id.* at *1. The plaintiffs asserted that the Old Sign Ordinance constituted unconstitutional restrictions on free speech. In holding that the claims were ripe for review, the court differentiated cases cited

8

by LFUCG that required finality, many of which are cited by LFCUG in this case, because the lawsuit "is not a regulatory takings challenge involving other, incidental constitutional claims" but "is a direct challenge of the constitutionality of the ordinance under the First and Fourteenth Amendments" involving the "law's substance," which makes the test for ripeness different. *Id.* at *12. The court went on to hold that because plaintiff "has not brought these types of 'constitutional claims arising out of land use disputes,' [] the finality requirement is inapplicable here." *Id.* at *13.

Because whether Lockridge is subject to the finality requirement depends on what the plaintiff is challenging, the Court turns to the complaint. [DE 1]. The complaint alleges five counts - one count for each denied application. For each of the five sign applications, the complaint declares that the "denial of Lockridge's application. . . violates Lockridge's free speech rights" [*Id.* at 49, 55, 61, 67, 73] and explains that "the applicable provisions of the Sign Regulation are unconstitutional" because "they are content-based, speaker-based, favor commercial over noncommercial speech, favor government speech and speakers (including Lexington) over the speech of private citizens" and "were part of a patently unconstitutional sign regulatory scheme." [*Id.* at 50, 56, 62, 68, 74]. The relief being sought by Lockridge asks for "an order declaring that Lexington's denial of Lockridge's

9

sign applications violated the First Amendment." [*Id*. at 77]. While Lockridge's complaint does not contain an independent claim attacking the Old Sign Ordinance's constitutionality, it is clear that the claims asserted hinge on the law's constitutionality.

The factual similarities between Lamar and Lockridge's claims require identical resolutions. Both plaintiffs, businesses in the sign-display industry, claim that the same law, the Old Sign Ordinance, violates their First Amendment rights and do not bring an additional claim under the Fifth Amendment or other Act related to land use. Because Lockridge's claims also find issue with the Old Sign Ordinance's substance, the asserted claims do not arise out of land use disputes, meaning the claims are not subject to the finality requirement. While some of the specific claims brought by Lamar and Lockridge differ, relief for both plaintiffs can only be granted if the Court finds that the Old Sign Ordinance's substance was unconstitutional.

The policy considerations that shaped the Sixth Circuit's decisions in *Insomnia* and *Dubuc* are not equally present here. Because the First Amendment challenge in this case is a legal issue, factual development will not provide further clarification. Unlike the Sixth Circuit retaliation cases, the main issue is whether the law is unconstitutional, not whether the application of the law to the plaintiff's situation was unconstitutional. Therefore, Lockridge's claims are ripe for review by the Court.

**C. MOTION TO STAY**

LFUCG's Motion argues, in the alternative, that the proceedings should be stayed until the United States Supreme Court decides whether to grant certiorari review in *City of Austin v. Regan National Advertising of Texas, Inc.*, Supreme Court Case No. 20-1029. On June 30, 2021, LFUCG notified the Court that the Supreme Court had granted the petition for certiorari. [DE 14]. On April 21, 2022, the Supreme Court issued a written opinion in No. 20-1029, resolving the matter. *City of Austin v. Reagan Nat'l Advert. of Austin*, LLC, 142 S. Ct. 1464 (2022). Because the alternative motion asked the Court to "stay all proceedings pending the Supreme Court's issuance of an opinion in *City of Austin*" [DE 11 at 1], the Supreme Court's resolution of the case moots the alternative motion to stay.

<strong>CONCLUSION</strong>

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)   Defendant LFUCG's Motion to Dismiss [DE 11] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Plaintiff's claims for declaratory and injunctive relief are **DISMISSED AS MOOT**. In all other respects, the Motion is denied.

(2)   Defendant's Alternative Motion to Stay [DE 11] is **DENIED**.

This the 1st day of July, 2022.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge